```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF GEORGIA
                    GAINESVILLE DIVISION

STACEY THOMAS McINTYRE,         *
                                *
     Plaintiff,                 *    CIVIL ACTION FILE
                                *
vs.                             *    NO. _____
                                *
CITY OF TOCCOA, GEORGIA,        *
ERIK W. CARTER, and JONATHAN    *
H. CROSS, in their              *
individual capacities,          *    JURY TRIAL DEMANDED
                                *
     Defendants.                *
```

## COMPLAINT FOR DAMAGES

### NATURE OF THE CASE

1.

This is a civil rights case.  Investigator Erik Carter performed a constitutionally incompetent investigation which directly caused the unlawful arrest and pretrial detention of Plaintiff Stacey McIntyre.  McIntyre seeks monetary damages, attorney's fees and costs, and a trial by jury.

### PARTIES

2.

Plaintiff STACEY THOMAS McINTYRE ("Rusty") is a resident of Stephens County, Georgia.

3.

Defendant CITY OF TOCCOA, GEORGIA ("the City") is a political subdivision of the State of Georgia, which has the

capacity to sue and be sued.

4.

Defendant ERIK CARTER ("Inv. Carter") was employed by the City of Toccoa's police department, and acted under color of state law, at all times relevant to this complaint. Inv. Carter is sued in his individual capacity.

5.

Defendant JONATHAN H. CROSS ("Lt. Cross") was employed by the City of Toccoa's police department, and acted under color of state law, at all times relevant to this complaint. Lt. Cross is sued in his individual capacity.

VENUE

6.

All acts or omissions alleged in this complaint occurred in the Northern District of Georgia, where at least one defendant resides, and therefore venue is properly within this district under 28 U.S.C. § 1391(b)(2).

JURISDICTION

7.

Jurisdiction for this suit is conferred in part by 42 U.S.C. § 1983, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

8.

Under 28 U.S.C. §§ 1331 and 1343(a)(3)&(4), the Court can entertain an action to redress a deprivation of rights guaranteed by the United States Constitution, and the Court has jurisdiction under 28 U.S.C. § 1367 to hear an action to redress a deprivation of rights guaranteed by the laws and the Constitution of the State of Georgia.

FACTS

The underlying crime

9.

On January 18, 2022, City of Toccoa Police Department ("TPD") officers responded to a report of a 'breaking and entering' at J & C Auto Care located at 70 Mize Road, Toccoa, Georgia.

10.

TPD Officer Jordyn Preston arrived to the shop and interviewed the complainant, Jason Pritchett, who told her that someone had cut the lock off the shop's door, entered the office, and taken a gun from a filing cabinet.

11.

Pritchett also showed Officer Preston that the shop's

safe had been damaged when the suspect(s) removed its door, and that the contents of the safe were scattered on the floor.

12.

The owner of the safe, Ronald Roberts, told Officer Preston that approximately $35,000 in cash was missing from the safe.

<u>Inv. Carter investigates the crime</u>

13.

The criminal matter at J & C Auto Care was referred to TPD's Criminal Investigation Division for investigation and, upon information and belief, was assigned to Inv. Erik Carter.

14.

At all times relevant here, Rusty, his wife Michelle, and their children have lived in a house directly across the street from J & C Auto Care's property.

15.

During his investigation, Inv. Carter learned that, in 2022, the McIntyres installed a new fence around their home, and installed a storage building on their property. Also in 2022, the McIntyres had a new roof and new gutters installed on their home.

16.

Based on his suspicion that the MacIntyres were involved in the burglary, on December 19, 2023, Inv. Carter applied for and obtained a search warrant ("the Search Warrant") for the following:

> The residence / home, storage building on the left side of the residence, and the curtilage of 55 Midget Drive in Toccoa, GA 30577, Stephens County and any vehicle that is parked on the property and/or registered to Stacy and Michelle Mcintyre to locate a handgun (Taurus .38 Revolver with SIN # JR75839), a large amount of US Currency, and a unknown quantity two dollar bills that were stolen from J&C Auto Care (70 Mize Road, Toccoa, GA 30577) on January 17, 2022 -- January 18, 2022.
>
> There is now located, in STEPHENS COUNTY, Georgia, certain property, items, articles, instruments and person(s), namely: (Specify evidence, contraband, or person(s) to be searched for): Possibly a large amount of US Currency, several two dollar bills, and a Taurus .38 revolver with the Serial Number "JR75839".

17.

Upon information and belief, Lt. Cross instructed Inv. Carter to arrest Rusty.

18.

Two days later, on the morning of December 21, Inv. Carter and other TPD officers executed the Search Warrant.

19.

When the Search Warrant was executed, Rusty was at his painting and restoration job at Spags Cabinet Shop located

in Royston, but Michelle and their children were at the home.

20.

After searching the McIntyres' home, storage building, vehicles, and curtilage, the officers did not find any of the items listed or described in the Search Warrant. Nor did the officers find any other items that, even remotely, suggested that Rusty (or Michelle) had committed any crime.

21.

One of the police officers instructed Michelle to call Rusty and ask him to come home. Michelle called Rusty shortly after 10:30 a.m., explaining that the police had just searched their home and now they wanted Rusty to return home so they could talk to him.

22.

After speaking with Michelle, Rusty left work (at around 10:50 a.m.) to head home. It took about 45 minutes for Rusty to get home.

23.

Once at home, Rusty met with Inv. Carter, who informed Rusty that he was under arrest for the J & C Auto Care burglary in January 2022. Rusty was placed in handcuffs.

24.

Rusty was in shock because he knew that he had not

committed any crime; he cooperated fully with the officers, hoping that the mistake would be cleared up quickly.

25.

As the police were arresting Rusty, people who were working across the street at J & C Auto Care were jeering and playing the opening theme to the television show "Cops" ("Bad Boys"), while Michelle and Rusty's children were nearby.

26.

At Inv. Carter's instruction, an officer took Rusty to the police department, where Inv. Carter and Lt. Cross interrogated Rusty for about an hour.

27.

During the interrogation, which was recorded by audio and video, the officers encouraged Rusty to confess to the burglary at J & C Auto Care, threatening that he could go to prison for 20 years if convicted.

28.

Because Rusty knew nothing about the burglary, and because he played no part in the crime, Rusty refused to admit to any crime even though he was terrified.

29.

Later that day, Rusty was taken to the Stephens County Jail where he was photographed and dressed out in a green

and white striped jumpsuit.

## The arrest warrants

30.

That same day, on December 21, at around 4:00 p.m., at Lt. Cross's direction, Inv. Carter applied for three arrest warrants for Rusty. In the first warrant (# W23-2057), Inv. Carter swore:

> Personally came ERIK W CARTER, who on oath says that, to the best of his/her knowledge and belief, MCINTYRE, STACEY THOMAS did, in the County aforesaid, commit the offense of:
>
> 16-7-23(a)(1) -- CRIMINAL DAMAGE TO PROPERTY -- 2ND DEGREE
>
> in said County between the hours of 9:00 PM and 6:00 AM, on the 17th day of November, 2022 - 18th day of November, 2022. The place of occurrence of said offense being J&amp;C AUTO CARE (70 MIZE ROAD, TOCCOA, GA 30577 STEPHENS COUNTY) and against the Laws of the State of Georgia. Said offense being described as
>
> 16-7-23(a)(1)-CRIMINAL DAMAGE TO PROPERTY - 2ND DEGREE
> (A)(1) A PERSON COMMITS THE OFFENSE OF CRIMINAL DAMAGE TO PROPERTY IN THE SECOND DEGREE WHEN HE:
>
> INTENTIONALLY DAMAGES ANY PROPERTY OF ANOTHER PERSON WITHOUT HIS CONSENT AND THE DAMAGE THERETO EXCEEDS $500.00
> TO WIT: STACEY THOMS MCINTYRE DID COMMIT THE SAID OFFENSE WHEN HE BROKE INTO J&camp;C AUTO CARE AND CUT INTO A METAL SAFE VALUED AROUND $5000 TO $10000 IN VALUE CAUSING EXTENSIVE DAMAGE TO THE SAFE BEYOND REPAIR.
>
> and this deponent makes this affidavit that a warrant may issue for his/her arrest.

31.

At the same time, Inv. Carter swore out two other warrants (# W23-2058 & W23-2059), alleging his belief that Rusty had committed the crimes of Theft by Taking (Felony) and Burglary, 2nd degree (Felony) during the same incident.

32.

The warrants were falsely or recklessly sworn out because Rusty was not the person who committed those crimes, and a simple, competent investigation would have confirmed this fact.

33.

Inv. Carter gathered no inculpatory information on which a reasonable law enforcement officer could rely upon to believe that Rusty had committed a crime at J & C Auto Care in January 2022.

34.

After hiring a bail bonding company, Rusty was able to post a $30,000 bond; he was released from the jail on the evening of December 22, 2023.

35.

Soon after his release from jail, Rusty hired a criminal defense lawyer at great expense.

36.

Soon after his release from jail, Rusty was fired from

his job at Spags Cabinet Shop, as his boss told him he could 'not have a thief working there.'

38.

Rusty's mug shot from the arrest appeared in the Georgia Gazette print edition and remained online for months after his arrest.

38.

The criminal warrants against Rusty were dismissed by order dated February 2, 2024.

COUNT 1

42 U.S.C. § 1983: False Arrest

in violation of the Fourth Amendment

(Defendant Carter)

39.

Rusty incorporates paragraphs 1 through 38 here by this reference.

40.

Based upon his experience, knowledge and training as a law enforcement officer, Inv. Carter knew or should have known that no arguable probable cause existed to believe that Rusty committed a crime at J & C Auto Care in January 2022.

41.

At all times relevant to this action, the law was

established with obvious clarity that arresting a citizen without arguable probable cause and depriving a citizen of his liberty violates the Fourth Amendment to the United States Constitution.

42.

As a direct and proximate cause of In. Carter's acts and omissions, Rusty was detained, arrested, and incarcerated against his will, entitling him to compensatory and punitive damages in an amount to be determined by the enlightened conscience of the jury.

COUNT 2

42 U.S.C. § 1983: Malicious Prosecution

in violation of the Fourth Amendment

(Defendant Carter)

43.

Rusty incorporates paragraphs 1 through 38 here by this reference.

44.

Inv. Cater initiated a criminal prosecution against Rusty alleging a violation of O.C.G.A. §§ 16-7-23(a)(1) (criminal damage to property, second degree), 16-8-2 (theft by taking, felony), and 16-7-1(c) (burglary, second degree), and he knew or should have known that no arguable probable cause existed to believe that Rusty had committed any crime

recognized by law.

45.

Inv. Carter initiated the arrest and continued the prosecution of Rusty by making false and reckless statements and material omissions in his arrest warrant applications, thus displaying malice and a reckless disregard for Rusty's civil rights.

46.

The arrest and prosecution forced Rusty to spend time in jail.

47.

This criminal prosecution terminated favorably for Rusty.

48.

At all times relevant to this action, the law was established with obvious clarity that arresting a citizen without probable cause and depriving a citizen of his liberty violates the Fourth Amendment to the United States Constitution.

49.

As a result of his arrest and prosecution, Rusty suffered emotional, mental, and financial injury, entitling him to recover nominal, compensatory, and punitive damages against Inv. Carter in an amount to be determined by the

enlightened conscience of the jury.

## COUNT 3

### 42 U.S.C. § 1983: Supervisory Liability

(Defendant Cross)

50.

Rusty incorporates paragraphs 1 through 38 here by this reference.

51.

Because Lt. Cross directly participated in the investigation (i.e., order Rusty's arrest and post-arrest warrant applications) which caused Rusty's unlawful seizure, he is subject to supervisory liability.

## COUNT 4

### Municipal Liability - Law Enforcement Activity

(City of Toccoa)

52.

Rusty incorporates paragraphs 1 through 38 here by this reference.

53.

This Count is alleged against the City of Toccoa.

54.

Rusty timely provided ante litem notice to the City.

55.

The City has purchased liability insurance from Georgia

Interlocal Risk Management Agency ("GIRMA") that provides coverage and indemnification for liability arising from law enforcement operations, including errors and omissions. That policy was in effect at all times relevant to this complaint.

56.

The purchase of liability insurance constitutes a limited waiver of sovereign immunity by the City of Toccoa.

57.

During the course of their employment and while fulfilling their official duties, Inv. Carter and Lt. Cross were reckless or negligent in arresting and then preparing a post-arrest warrant application accusing the wrong person of the crime.

58.

The City is liable for the tortious actions of Inv. Carter under the doctrine of respondeat superior for violations of State law.  Under that doctrine, the City is not entitled to present a defense of official immunity.

COUNT 5

O.C.G.A. § 13-6-11: Attorney's Fees

(City of Toccoa)

59.

Rusty incorporates paragraphs 1 through 38 here by this

reference.

60.

By the acts and omissions specified above, as well as other conduct, the City has acted in bad faith, has been stubbornly litigious, and has caused Rusty unnecessary trouble and expense.

61.

Rusty is entitled to recover his actual expenses of litigation, including attorney's fees, from the City.

WHEREFORE, the plaintiff respectfully requests the following relief:

(a) That as to Counts 1, 2, 3, and 4, the Court award Rusty McIntyre damages in an amount to be determined by the enlightened conscience of an impartial jury;

(b) That as to Count 5 the Court grant Rusty McIntyre his reasonable costs and attorney's fees in bringing this action in an amount to be determined at trial;

(c) That Rusty McIntyre be granted a trial by jury on all issues so triable; and

(d) That Rusty McIntyre be granted such other and further relief as this Court deems just and

proper.

Respectfully submitted,

BY: /s/ Cary S. Wiggins
Cary S. Wiggins
Ga. Bar No. 757657

WIGGINS LAW GROUP, LLC
Suite 401
260 Peachtree Street, NW
Atlanta, Georgia 30303
Telephone: (404) 659-2880
cary@wigginslawgroup.com